## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

Pamela A. Seelman,

        Plaintiff,

v.

Bank of America Corporation, Barclays
Bank of Delaware Credit Card, Wells Fargo
Financial, Inc. and Department Stores
National Bank d/b/a Macys,

        Defendants.

**Civil Action No.:**

**COMPLAINT
JURY TRIAL DEMANDED**

### JURISDICTION

1.  Jurisdiction of this Court arises under 15 U.S.C. § 1681 *et seq.* and 28 U.S.C § 1331.

### PARTIES

2.  Plaintiff Pamela A. Seelman ("Plaintiff") is a natural person who resides in the City of Deerfield, State of Wisconsin, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

3.  Defendant Bank of America Corporation ("Defendant BOA") is a foreign corporation organized under the laws of the State of Delaware and headquartered at 100 North Tryon Street, Charlotte, North Carolina, 28255.  Defendant BOA is a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

4.  Defendant Barclays Bank of Delaware d/b/a Midwest Airlines Credit Card (hereinafter "Defendant Barclays") is a national association and is regulated by the Federal Deposit Insurance Corporation.  Defendant Barclays has a principal place

of business at 100 South West Street, Wilmington, Delaware, 19801.  Defendant

Barclays is a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-

2(b).

5.   Defendant Wells Fargo Financial, Inc. (hereinafter "Defendant WF") is a financial

company headquartered at 800 Walnut Street, Des Moines, Iowa, 50309 with an

registered Agent of service of Corporation Service Company, 8040 Excelsior

Drive, Suite 400, Madison, Wisconsin, 53717.  Defendant WF is a "furnisher" of

consumer information pursuant to 15 U.S.C. § 1681s-2(b).

6.   Defendant Department Stores National Bank d/b/a Macys ("Defendant

DSNB/MACYS") is a national bank and is regulated by the Office of the

Comptroller of the Currency.  Defendant DSNB/MACYS has a principal place of

business at 701 East 60th Street North, Sioux Falls, South Dakota, 57104.

Defendant DSNB/MACYS is a "furnisher" of consumer information pursuant to

15 U.S.C. § 1681s-2(b).

## FACTUAL ALLEGATIONS

### ALL DEFENDANTS

7.   Due to unfortunate and unforeseen economic circumstances, Plaintiff anticipated

she would not be able to keep up with her bills.

8.   In order to protect her credit profile, and in an attempt to pay off her creditors,

Plaintiff entered into a voluntary amortization of her debts by filing a Wisconsin

Chapter 128.21 proceeding in Dane County Circuit Court, the court of her

residence.

2

9.    The Chapter 128 proceeding was assigned case #09-CV-006299.

10.   On December 21, 2009, the Dane County Circuit Court issued an order appointing Susan A. Schuelke ("Trustee") as Plaintiff's Trustee for the Wisconsin Chapter 128 plan.

11.   On or about January 5, 2010, Plaintiff confirmed the Affidavits of Debts.

12.   On January 5, 2010, Trustee Susan A. Schuelke sent the Notice to Creditors to all creditors listed on the Affidavit of Debts including the Defendants named here in.

13.   The Notice to Creditors stated that a creditors meeting would be held on January 19th, 2010 for the purpose of considering an amortization plan, determining the claims to be covered by the plan, and determining the balances due to each of the creditors including the defendants named in this lawsuit as of December 5, 2009.

14.   The January 5, 2010 Notice advised Defendants that they were prohibited by Order of the Court from adding interest, late charges, or related administrative costs or fees to Plaintiff's balances after the date of her Chapter 128 petition which was December 5th, 2009.

15.   By operation of Wisconsin Statute 128.21 and the Dane County Circuit Court's order dated December 21st, 2009, Defendants were prohibited from engaging in further collection activity on Plaintiff's accounts.

16.   The Circuit Court Judge filed an Order approving Trustee Schuelke's report with the plan for amortization of the debts that complies with Section 128.21 Stats on February 17th, 2010.

17.   On or about February 17th, 2010, Plaintiff's Wisconsin Chapter 128 Trustee

Schuelke, sent the Notice to Creditors on behalf of Plaintiff to all Defendants advising that the Dane County Circuit Court had taken jurisdiction and approved the Plaintiff's repayment plan.

18.   In October 2011, Plaintiff requested credit reports from the national credit reporting agencies to make sure that the creditors included in her debt amortization plan were reporting on her accounts accurately.

19.   Plaintiff reviewed the credit reports that she received from the national credit reporting agencies: Experian, Equifax/CSC, and TransUnion ("CRAs").

20.   In March of 2012, Plaintiff sent a dispute letter via certified mail to the CRAs, disputing the inaccuracies in her credit reports.

21.   Plaintiff's dispute letter specifically stated that she had filed a Wisconsin Chapter 128 receivership of which all her creditors were made aware in January 2010. Plaintiff also included the name of her Trustee and the court file number for Dane County.

22.   In April of 2012, Plaintiff obtained reinvestigation reports from the three CRAs in response to her March, 2012 dispute letter.

23.   As of the date of the filing of this Complaint, Plaintiff is current with her payments into her Wisconsin Chapter 128 debt amortization plan.

## FACTUAL ALLEGATIONS AGAINST BANK OF AMERICA

24.   Plaintiff incorporates by reference paragraphs 7 through 23 as though fully stated herein.

25.   Plaintiff's Affidavit of Debts - §128.21, Wis. Stats. was filed with the court and

4

approved Bank of America Account #xxxx-xxxx-xxxx-8151 as a creditor with an amount of $3,560.17 due from Plaintiff.

26.    Bank of America did not object to amount of the debt the plan recognized as owing from Plaintiff to Bank of America.

27.    On March 20, 2012, Plaintiff disputed BOA's reporting via certified mail to the CRAs.

28.    Plaintiff's dispute instructed the CRAs that her BOA account was being reported inaccurately, and that BOA was receiving payments from the Chapter 128 debt amortization plan that Plaintiff had entered into and to which BOA had agreed.

### EXPERIAN DISPUTE

29.    Upon information and belief, Experian forwarded Plaintiff's March 20, 2012 dispute letter to BOA and instructed it to investigate the accuracy of its reporting.

30.    Plaintiff received Experian's Dispute results dated April 30, 2012, in response to her March 20, 2012 dispute letter.  Plaintiff was shocked to see that the dispute results for BOA account stated "Remains" and the tradeline was being reported as: "BANK OF AMERICA – Recent balance: $581 as of Apr 2012, Status: Account charged off. $1,214 written off."

31.    BOA's reporting failed to indicate in any way that Plaintiff disputed her BOA account or acknowledged BOA's consent to the Ch 128 plan and that it was not written off or charged off.

32.    Thus, in response to Plaintiff's dispute to Experian, BOA failed to conduct a reasonable investigation, failed to update its tradeline to accurately and completely

reflect the reality of Plaintiff's account and therefore violated 15 U.S.C. §1681s-2(b).

33.   BOA's failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

### TRANSUNION DISPUTE

34.   Upon information and belief, TransUnion forwarded Plaintiff's March 20th, 2012 dispute to BoA and instructed it to investigate the accuracy of its reporting.

35.   Plaintiff received Trans Union's April 18th, 2012 investigation report, in response to her dispute letter.  Plaintiff was shocked to see that the investigation results for the BOA account stated "New Information Below" and that the account was being reported as: "BANK OF AMERICA - Balance: $581 Pay Status:  >Charged off<."

36.   BOA's by such reporting failed to indicate in any way that Plaintiff disputed her BOA account or acknowledged BOA's consent to the Ch 128 plan and that the account was not charged off.

37.   Thus, in response to Plaintiff's dispute to TransUnion, BOA failed to conduct a reasonable investigation, failed to update its tradeline to accurately and completely reflect the reality of Plaintiff's account, failed to note that Plaintiff disputed the account and therefore violated 15 U.S.C. §1681s-2(b).

38.   BOA's failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

## *FIRST EQUIFAX DISPUTE*

39.    Upon information and belief, Equifax and or its partner CSC forwarded Plaintiff's March, 2012 dispute to BOA and instructed it to investigate the accuracy of its reporting.

40.    Plaintiff received CSC's April 16th, 2012 reinvestigation report, in response to her dispute letter.  Plaintiff was shocked to see that the investigation results for the BOA account stated "The status of this account has been updated." The account was being reported as: "Bank of America - Balance: $635, Charged Off Amount: $1,214" and was showing late payments from February 2010 through July 2010.

41.    BOA's reporting failed to indicate in any way that Plaintiff disputed her BOA account or acknowledged BOA's consent to the Ch 128 plan, failed to note the account was current and that it was not charged off.

42.    Thus, in response to Plaintiff's dispute to Equifax/CSC, BOA failed to conduct a reasonable investigation, failed to update its tradeline to accurately and completely reflect the reality of Plaintiff's account, and therefore violated  15 U.S.C. §1681s-2(b).

43.    BOA's failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

## *SECOND EQUIFAX DISPUTE*

44.    Upon information and belief, Plaintiff further disputed the results of the CSC reinvestigation of April 14th, 2012.

45.    Plaintiff believes her statement in ¶44 above is true and accurate because she

received a "reinvestigation report" dated June 4, 2012 which said "…the results of your reinvestigation request…" and then likewise stated: "Bank of America - Balance: $635, Charged Off Amount: $1,214" and continued to show late payments from February 2010 through July 2010.

46.   BOA by so reporting again failed to indicate in any way that Plaintiff disputed her BOA account or acknowledged BOA's consent to the Ch 128 plan, failed to note the account was current and that it was not charged off.

47.   Thus, in response to Plaintiff's 2nd dispute to Equifax/CSC, BOA failed to conduct a reasonable investigation, failed to update its tradeline to accurately and for the 2nd time completely reflect the reality of Plaintiff's account, and therefore violated 15 U.S.C. §1681s-2(b).

48.   BOA's failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

## FACTUAL ALLEGATIONS AGAINST BARCLAYS BANK

49.   Plaintiff incorporates by reference paragraphs 7 through 23 as though fully stated herein.

50.   Plaintiff's Affidavit of Debts - §128.21, Wis. Stats. was filed with the court and approved Barclays' (Midwest Airlines) Account #xxxx-xxxx-xxxx-9873 as a creditor with an amount of $6,995.93 due from Plaintiff.

51.   Barclays did not object to amount of the debt the plan recognized as owing from Plaintiff to Barclays.

52.   On March 20, 2012, Plaintiff disputed Barclays' reporting via certified mail to the

8

CRAs.

53.   Plaintiff's dispute instructed the CRAs that her Barclays account was being reported inaccurately, and that Barclays was receiving payments from the Chapter 128 debt amortization plan that Plaintiff had entered into.

### EXPERIAN DISPUTE

54.   Upon information and belief, Experian forwarded Plaintiff's March 20, 2012 dispute letter to Barclays and instructed it to investigate the accuracy of its reporting.

55.   Plaintiff received Experian's Dispute results dated April 30, 2012, in response to her March 20, 2012 dispute letter.  Plaintiff was shocked to see that the dispute results for Barclays account stated "Updated" and the tradeline was being reported as: "BARCLAYS BANK DELAWARE – Recent balance: $4,190 as of Apr 2012, Status: Closed", and was showing late payments for 8 months during February 2010 through October 2010, but not March of 2010.

56.   Barclays' reporting failed to acknowledge Barclays' consent to the Ch 128 plan and failed to note the account was current.

57.   Thus, in response to Plaintiff's dispute to Experian, Barclays failed to conduct a reasonable investigation, failed to update its tradeline to accurately and completely reflect the reality of Plaintiff's account and therefore violated  15 U.S.C. §1681s-2(b).

58.   Barclays' failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

9

### *TRANS UNION DISPUTE*

59.  Upon information and belief, TU forwarded Plaintiff's March 20th, 2012 dispute to Barclays and instructed it to investigate the accuracy of its reporting.

60.  Plaintiff received TU's April 18th, 2012 investigation report, in response to her dispute letter. Plaintiff was stunned to see that the investigation results for the Barclays account stated "New Information Below" and that the account was being reported as: "BARCLAYS BANK DELAWARE - Balance: $4,190.00, Pay Status: Current; Paid or Paying as Agreed" and was showing late payments (13 months out of 20 months) during March 2010 through October 2011.

61.  Barclays' reporting failed to indicate in any way that Plaintiff disputed her Barclays account or acknowledged Barclays' consent to the Ch 128 plan and failed to note the account was current.

62.  Thus, in response to Plaintiff's dispute to TransUnion, Barclays failed to conduct a reasonable investigation, failed to update its tradeline to accurately and completely reflect the reality of Plaintiff's account and therefore violated 15 U.S.C. §1681s-2(b).

63.  Barclays' failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

### *EQUIFAX DISPUTE*

64.  Upon information and belief, Equifax and or its partner CSC forwarded Plaintiff's March, 2012 dispute to Barclays and instructed it to investigate the accuracy of its reporting.

65.     Plaintiff received CSC's April 16th, 2012 reinvestigation report, in response to her dispute letter.  Plaintiff was shocked to see that the investigation results for the Barclays account stated "The status of this account has been updated." The account was being reported as: "Barclays Bank Delaware - Balance: $4,382" and lists late payments for several months (13 of 19) during March 2010 through October 2011.

66.     Barclays' reporting failed to indicate in any way that Plaintiff disputed her Barclays account or acknowledged Barclays' consent to the Ch 128 plan, failed to note the account was current.

67.     Thus, in response to Plaintiff's dispute to Equifax, Barclay's failed to conduct a reasonable investigation, failed to update its tradeline to accurately and completely reflect the reality of Plaintiff's account and therefore violated  15 U.S.C. §1681s-2(b).

68.     Barclay's failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

## FACTUAL ALLEGATIONS AGAINST WELLS FARGO FINANCIAL, INC.

69.     Plaintiff incorporates by reference paragraphs 7 through 23 as though fully stated herein.

70.     Plaintiff's Affidavit of Debts - §128.21, Wis. Stats. was filed with the court and approved Wells Fargo Financial Account #xxxx-xxxx-xxxx-4889 as a creditor with an amount of $8,846.96 due from Plaintiff.

71.     Wells Fargo Financial did not object to amount of the debt the plan recognized as

owing from Plaintiff to Wells Fargo.

72.    On March 20, 2012, Plaintiff disputed Wells Fargo's reporting via certified mail to the CRAs.

73.    Plaintiff's dispute instructed the CRAs that her Wells Fargo account was being reported inaccurately, and that Wells Fargo was receiving payments from the Chapter 128 debt amortization plan that Plaintiff had entered into.

### *EXPERIAN DISPUTE*

74.    Upon information and belief, Experian forwarded Plaintiff's March 20, 2012 dispute letter to Wells Fargo and instructed it to investigate the accuracy of its reporting.

75.    Plaintiff received Experian's Dispute results dated April 30, 2012, in response to her March 20, 2012 dispute letter.  Plaintiff was shocked to see that the dispute results for Wells Fargo account stated "Updated" and the tradeline was being reported as: "WELLS FARO FINANCIAL CARDS – Recent balance: $4,622 as of Apr 2012, Status: Closed" and further showed late payments from February through September 2010.

76.    Wells Fargo's reporting failed to indicate in any way that Plaintiff disputed her Wells Fargo account or acknowledged Wells Fargo's consent to the Ch 128 plan and failed to note the account was current.

77.    Thus, in response to Plaintiff's dispute to Experian, Wells Fargo failed to conduct a reasonable investigation, failed to update its tradelines to accurately and completely reflect the reality of Plaintiff's accounts and therefore violated   15

U.S.C. §1681s-2(b).

78.    Wells Fargo's failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

### *TRANSUNION DISPUTE*

79.    Upon information and belief, TU forwarded Plaintiff's March 20, 2012 dispute letter to Wells Fargo and instructed it to investigate the accuracy of its reporting.

80.    Plaintiff received TU's Dispute results dated April 18, 2012, in response to her March 20, 2012 dispute letter.  Plaintiff was shocked to see that the dispute results for Wells Fargo account stated "Updated" and the tradeline was being reported as: "WF FINANCIAL CARDS – Balance: $6,109, Pay Status: Current; Paid or Paying as Agreed" and further showed late payments from February through September, 2010.

81.    Wells Fargo's reporting failed to indicate in any way that Plaintiff disputed her Wells Fargo account or acknowledged Wells Fargo' consent to the Ch 128 plan and failed to note the account was current.

82.    Thus, in response to Plaintiff's dispute to TU, Wells Fargo failed to conduct a reasonable investigation, failed to update its tradelines to accurately and completely reflect the reality of Plaintiff's accounts and therefore violated  15 U.S.C. §1681s-2(b).

83.    Wells Fargo's failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

## FACTUAL ALLEGATIONS AGAINST MACYS/DSNB

84.   Plaintiff incorporates by reference paragraphs 7 through 23 as though fully stated herein.

85.   Plaintiff's Affidavit of Debts - §128.21, Wis. Stats. was filed with the court and approved MACYS/DSNB Account #xx-xxx-xxx-9770 as a creditor with an amount of $2,750.76 due from Plaintiff.

86.   MACYS/DSNB did not object to amount of the debt the plan recognized as owing from Plaintiff to MACYS/DSNB.

87.   On March 20th, 2012, Plaintiff disputed MACYS/DSNB reporting to the CRAs via certified mail.

88.   Plaintiff's dispute instructed the CRAs that her MACYS' account was being reported inaccurately, and that MACYS was receiving timely payments from the Chapter 128 debt amortization plan that Plaintiff had filed in Court.

### EXPERIAN DISPUTE

89.   Upon information and belief, Experian forwarded Plaintiff's March, 2012 dispute to MACYS and instructed it to investigate the accuracy of its reporting.

90.   Plaintiff received Experian's April 30th, 2012 reinvestigation report, in response to her dispute letter.  Plaintiff was shocked to see that the MACYS' account with was listed as: "Updated" but still being reported as "MACYS - Recent balance: $732 as of Apr 2012 and Status: Account charged off. $2,845 written off. $732 past due as of Apr 2012."

91.   MACYS' reporting failed to indicate in any way that MACYS' was receiving

14

regular and timely payments towards the balance and that it was not charged off.

92.     Thus, in response to Plaintiff's dispute to Experian, MACYS failed to conduct a reasonable investigation, failed to update its tradeline to accurately and completely reflect the reality of Plaintiff's account, and therefore violated 15 U.S.C. §1681s-2(b).

93.     MACY'S failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

### *TRANS UNION DISPUTE*

94.     Upon information and belief, TU forwarded Plaintiff's March, 2012 dispute to MACYS and instructed it to investigate the accuracy of its reporting.

95.     Plaintiff received TU's April 18th, 2012 reinvestigation report, in response to her dispute letter.  Plaintiff was shocked to see that the MACYS' account with was listed as: "NEW INFORMATION BELOW" but still being reported as "DSNB/MACYS - Balance: $880, Pay Status: >Charged Off< and Past Due: $880."

96.     MACYS' reporting failed to indicate in any way that MACYS' was receiving regular and timely payments towards the balance and that it was not charged off.

97.     Thus, in response to Plaintiff's dispute to TU, MACYS failed to conduct a reasonable investigation, failed to update its tradeline to accurately and completely reflect the reality of Plaintiff's account, and therefore violated 15 U.S.C. §1681s-2(b).

98.   MACYS' failure to conduct a reasonable investigation and failure to accurately and completely update its tradeline with Plaintiff was willful.

## DAMAGES

99.   As a result of Defendants' violations, Plaintiff suffered damage in the form of damage to her credit profile, denial of credit use, and depletion of her credit score.

100.   Plaintiff also suffered emotional distress in the form of hopelessness, helplessness, marital upset, stress, irritation, loss of sleep, anger, frustration, anxiety, and fear as a result of Defendants' conduct.

101.   As a result of Defendants' conduct, Plaintiff is entitled to actual, statutory, and punitive damages in addition to attorney's fees and costs as allowed by 15 U.S.C. § 1681o & n.

## TRIAL BY JURY

102.   Plaintiff is entitled to and hereby demands a trial by jury.  U.S. Const. Amend. 7. Fed. R. Civ. P. 38.

## CAUSE OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT –

### 15 U.S.C. § 1681, *et seq*. – ALL DEFENDANTS

103.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

104.   Defendants violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, by failing to review all

16

relevant information available, and by failing to update the tradelines on Plaintiff's credit report to accurately and completely reflect the status of her payment of her debts.

105.   Pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1), Defendants are liable for Plaintiff's actual damages caused by their failures to investigate, review, and respond accurately to Plaintiff's disputes about the way her debts were being reported.

106.   Defendants' conduct, actions, and inactions were willful, rendering them liable for punitive damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681n(a).

107.   Plaintiff is entitled to recover costs and attorney's fees from each of the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants for:

- Actual damages in an amount to be determined at trial against Defendants;

- Statutory and punitive damages in an amount to be determined at trial against Defendants pursuant to 15 U.S.C §§ 1681n(a);

- Costs and reasonable attorneys' fees pursuant 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and,

- Other and further relief as may be just and proper.

Dated this 11th day of October, 2012.        Respectfully submitted,


By:    s/Thomas J. Lyons
Thomas J. Lyons, Esq. (WI #1019127)
**LYONS LAW FIRM, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:  (651) 770-5830
tlyons@lyonslawfirm.com

Thomas J. Lyons, Jr. (MN#0249646)
**CONSUMER JUSTICE CENTER, P.A.**
367 Commerce Court
Vadnais Heights, MN  55127
Telephone:  (651) 770-9707
Facsimile:  (651) 704-0907
tommycjc@aol.com

**ATTORNEYS FOR PLAINTIFF**

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

STATE OF WISCONSIN   )
                     ) ss
COUNTY OF <u>DANE</u>       )

      I, Pamela A. Seelman, having first been duly sworn and upon oath, depose and say as

follows:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendants, cause unnecessary delay to any Defendants, or create a needless increase in the cost of litigation to any Defendants, named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

                                 s/Pamela A. Seelman
                                 Pamela A. Seelman

Subscribed and sworn to before me
this 3rd day of October, 2012.

s/David R. Dinkel
Notary Public of WI (Expires July 14, 2013)

19